No. 25-1120

# In the United States Court of Appeals
## FOR THE SEVENTH CIRCUIT

G.T., BY AND THROUGH NEXT FRIEND, LILIANA T. HANLON, SHIMERA JONES, LEROY JACOBS, BALARIE COSBY-STEELE, JOHN DEMATTEO, RICHARD MADAY, ALLISON THURMAN, AND SHERIE HARRIS,

*Plaintiffs – Appellants,*

v.

SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD.,

*Defendants – Appellees.*

On Appeal from the United States District Court for the Northern District of Illinois, No. 1:21-cv-04976 (Jenkins, J.)

## APPELLANTS' REPLY BRIEF

Keith J. Keogh
Theodore H. Kuyper
Gregg M. Barbakoff
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092

Christian Levis
Amanda Fiorilla
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, New York 10601
(914) 997-0500

*Attorneys for Appellants*

233669

# TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

ARGUMENT ..................................................................... 2

I.  Appellants' Data Constitutes "Biometric Identifiers" and
    "Biometric Information." .............................................. 2

    A.  Samsung Uses The Face Templates To Identify Individuals ........... 2

    B.  Appellants Satisfy The "Biometric Identifier" Definition,
        Which Must Be Applied As Written ................................. 6

    C.  Using The Plain Meaning Of "Identifier" Violates *Fiveash*
        and *Chapman* .................................................... 7

    D.  Reliance On BIPA's Other Definitions Fails ....................... 8

    E.  Federal Rules of Construction Cannot Help Samsung ................ 10

    F.  Reliance On Legislative History Fails ............................ 11

    G.  Reliance On Other "Biometric Identifiers" Fails .................. 11

    H.  *Zellmer* Is Unavailing .......................................... 12

    I.  Under Samsung's Interpretation, BIPA Would Regulate Nothing ...... 13

II. Appellants Allege A Section 15(b) Claim .............................. 14

    A.  That Samsung Used Software Does Not Absolve It Of Liability ....... 16

    B.  Samsung "Obtained" The Biometric Data ............................ 18

        1.  Samsung Gained Control Of The Data ........................... 19

        2.  Control Does Not Require Storage, Access, or Use ............. 21

        3.  Samsung Stored, Accessed, And Used The Data .................. 23

    C.  Samsung's Active-Step Rule And Analysis Fail ..................... 25

    D.  Samsung Took Active Steps To Capture The Data .................... 26

III. Appellants Allege A Section 15(a) Claim ......................................................... 27

CONCLUSION............................................................................................................ 28

CERTIFICATE OF COMPLIANCE ......................................................................... C-1

# TABLE OF AUTHORITIES

## Cases

*Barnett v. Apple, Inc.,*
225 N.E.3d (Ill. App. Ct. 2022) ...................................................... 17, 18, 23, 25, 26

*Beecher Med. Ctr., Inc. v. Turnock,*
566 N.E.2d 445 (Ill. App. Ct. 1990).............................................................. 7

*Bond v. United States,*
572 U.S. 844 (2014) ............................................................................... 11

*Burgess v. United States,*
553 U.S. 124 (2008) ........................................................................... 10, 13

*Clark v. Microsoft Corp.,*
688 F. Supp. 3d 743(N.D. Ill. 2023) ...................................................... 25

*Corbett v. Cty. of Lake,*
104 N.E.3d 389 (Ill. 2017) ................................................................. 10, 12

*Cothron v. White Castle Sys.,*
216 N.E.3d 918 (Ill. 2023) ............................................................ 14, 15, 19, 21

*Daichendt v. CVS Pharmacy, Inc.,*
2022 U.S. Dist. LEXIS 217484 (N.D. Ill. Dec. 2, 2022).......................................... 12

*Dawkins v. Fitness Int'l, LLC,*
210 N.E.3d 1184 (Ill. 2022) ................................................................. 14

*Degrasse v. Hyundai Motor Am.,*
2025 U.S. Dist. LEXIS 92765 (N.D. Ill. May 15, 2025)................................... 18, 25

*Dig. Realty Tr., Inc. v. Somers,*
583 U.S. 149 (2018) ............................................................................... 10

*Doe v. Apple Inc., ("Hazlitt III")*
2022 U.S. Dist. LEXIS 222988 (S.D. Ill. Aug. 1, 2022)......................................... 25

*Figueroa v. Kronos Inc.,*
454 F. Supp. 3d 772 (N.D. Ill. 2020) ...................................................... 22

*Hartman v. Meta Platforms, Inc.,*
  2024 U.S. Dist. LEXIS 167696 (S.D. Ill. Sep. 17, 2024) ........................................... 4

*Hazlitt v. Apple Inc.,* ("*Hazlitt I*")
  500 F. Supp. 3d 738 (S.D. Ill. 2020) ........................................................... 17, 20, 21

*Hazlitt v. Apple Inc.,* ("*Hazlitt II*")
  543 F Supp. 3d 643 (S. D. Ill. 2021) ..................................................... 17, 20, 21, 27

*Howe v. Speedway LLC,*
  2024 U.S. Dist. LEXIS 176263 (N.D. Ill. Sep. 29, 2024) ............................. 4, 18, 22

*Jones v. Microsoft Corp.,*
  649 F. Supp. 3d 679 (N.D. Ill. 2023) ...................................................... 18, 25, 26

*Mayhew v. Candid Color Sys.,*
  743 F. Supp. 3d 994 (S.D. Ill. 2024) ..................................................................... 25

*McDonald v. Symphony Bronzeville Park, LLC,*
  193 N.E.3d 1253 (Ill. 2022) ................................................................................. 10

*Mosby v. Ingalls Mem'l Hosp.,*
  234 N.E.3d 110 (Ill. 2023) ................................................................................... 22

*Nationwide Agribusiness Ins. Co. v. Dugan,*
  810 F.3d 446 (7th Cir. 2015) ............................................................................... 23

*People v. Castillo,*
  2022 IL 127894 ..................................................................................................... 11

*People v. Chapman,*
  965 N.E.2d 1119 (Ill. 2012) .............................................................. 2, 6, 7, 12, 18

*People v. Chavez,*
  2025 IL App (1st) 221601 ....................................................................................... 7

*People v. Evans,*
  356 N.E.2d 874 (Ill. Ct. App. 1976) ....................................................................... 5

*People v. Fiveash,*
  39 N.E.3d 924 (Ill. 2015) .............................................................................. 6, 7, 13

*People v. Goossens,*
  39 N.E.3d 956 (Ill. 2015) ................................................................................... 8, 11

*People v. Gutman,*
    959 N.E.2d 621 (Ill. 2011) .................................................................... 14

*People v. Meeks,*
    887 N.E.2d 870 (Ill. Ct. App. 2008) ........................................................ 5

*People v. Trainor,*
    752 N.E.2d 1055 (Ill. 2001) ................................................................... 7

*People v. Ward,*
    830 N.E.2d 556 (Ill. 2005) ............................................................. 22, 27

*People ex rel. Scott v. Schwulst Bldg. Ctr., Inc.,*
    432 N.E.2d 855 (Ill. 1982) ..................................................................... 7

*Powell v. Shisheido,*
    2:21-cv-02295-CSB-EIL (C.D. Ill. Aug. 22, 2022) ................................... 23

*Rivera v. Google Inc.,*
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ................................................ 5, 8

*Ronquillo v. Doctor's Assocs., LLC,*
    597 F. Supp. 3d 1227 (N.D. Ill. 2022) .............................................. 18, 26

*Rosenbach v. Six Flags Entm't Corp.,*
    129 N.E.3d 1197 (Ill. 2019) ........................................................ 7, 9, 10

*Straits Fin. LLC v. Ten Sleep Cattle Co.,*
    900 F.3d 359 (7th Cir. 2018) ....................................................... 15, 23

*Tanzin v. Tanvir,*
    592 U.S. 43 (2020) ..................................................................... 10, 13

*Terry v. Gary Cmty. Sch. Corp.,*
    910 F.3d 1000 (7th Cir. 2018) ................................................... 4, 8, 10

*United States v. Hook,*
    471 F.3d 766 (7th Cir. 2006) ............................................................... 14

*Vance v. Amazon.com, Inc.,*
    525 F. Supp. 3d 1301 (W.D. Wash. 2021) ............................................ 22

*Vance v. Microsoft Corp.,*
    525 F. Supp. 3d 1287 (W.D. Wash. 2021) ............................................ 23

*Watson v. Legacy Healthcare Fin. Servs., LLC*,
  196 N.E.3d 571 (Ill. App. Ct. 2021)................................................ 26

*Zahn v. N. Am. Power & Gas, LLC*,
  815 F.3d 1082 (7th Cir. 2016)............................................. 6, 10

*Zellmer v. Meta Platforms, Inc.*,
  104 F.4th 1117 (9th Cir. 2024) ....................................... 12, 13

## Statutes

740 ILCS 14/5(c) ..................................................................... 10

740 ILCS 14/5(g) ..................................................................... 11

740 ILCS 14/10............................................................................. 6, 9

740 ILCS 14/15(a) ........................................................ 25, 26, 27, 28

740 ILCS 14/15(b) .................................................................... 23

740 ILCS 14/15(e) ...................................................................... 9

## Other Authorities

*Black's Law Dictionary*,
  (2d pocket ed. 2001) ............................................................... 5

Oxford English Dictionary (Rev. 2004)...........................................19

Merriam-Webster.com, *Agency Definition*,
  https://www.merriam-webster.com/dictionary/agency................................17

Merriam-Webster.com, *Control Definition*,
  https://www.merriam-webster.com/dictionary/control ........................... 19

Merriam-Webster.com, *Feature Definition*,
  https://www.merriam-webster.com/dictionary/feature ............................. 3

Merriam-Webster.com, *Fingerprint Definition*,
  https://www.merriam-webster.com/dictionary/fingerprint...................... 12

Merriam-Webster.com, *Instrumentality Definition*,
    https://www.merriam-webster.com/dictionary/instrumentality...........................17

Merriam-Webster.com, *Means Definition*,
    https://www.merriam-webster.com/dictionary/means ................................................17

Merriam-Webster.com, *Obtain Definition*,
    https://www.merriam-webster.com/dictionary/obtain................................................18

Merriam-Webster.com, *Otherwise Definition*,
    https://www.merriam-webster.com/dictionary/otherwise..........................................19

Merriam-Webster.com, *Voiceprint Definition*,
    https://www.merriam-webster.com/dictionary/voiceprint .........................................12

Restatement (Third) of Agency (2006) .......................................................................16

## INTRODUCTION

Appellants adequately plead Samsung captured, collected, obtained, gained control of, and possessed their biometric data, without consent, from photos on Samsung Devices and stored it on the Devices, and in Samsung's cloud-server over which Samsung had complete control.[1] The Device users could not choose to turn it on or off, could not access or delete the biometrics, and indeed, did not know Samsung was collecting biometrics at all. Samsung's use of software to accomplish this does not absolve it of liability, especially given the software operated in secret.

Appellants also plead the data constitutes "biometric identifiers" and "biometric information." There is no dispute Samsung utilized face-geometry scans, which are expressly listed in the legislature's definition of "biometric identifier." Samsung's attempt to add a name-identification requirement for biometric identifiers and information has no basis in law. Even if identification were required, Samsung's authorities agree that identifying has *nothing* to do with determining a name.

Finally, if what Samsung claims is lacking here were actually required, BIPA would regulate *nothing* because no face-scan or fingerprint *by itself* can ever identify, much less determine a name.

In short, the allegations give Samsung more than fair notice under Rule 8 and plausibly suggest Appellants have a right to relief. Nothing more is required.

---

[1] Further references herein to "collect," "capture," "obtain," or any combination thereof are intended to refer to all three of those verbs—except for references in statutory construction arguments.

1

<u>ARGUMENT</u>

I.      Appellants' Data Constitutes "Biometric Identifiers" and "Biometric Information."

BIPA separately defines "biometric identifier" and "biometric information," yet Samsung attempts to conflate the definitions to limit their applicability. The definition of "biometric identifier" must be applied as written, without reading into it any additional requirements. The face-geometry scans alleged are expressly listed in that definition.

"Biometric information," on the other hand, has the word "identify" in the definition. This must be construed using plain meaning, which is satisfied because Samsung uses the data to identify via facial recognition, as explained below.

"Identify" has nothing to do with determining a name. As such, Samsung's argument its face-geometry scans are not regulated because they're not "capable of identifying an individual," despite being expressly included in the "biometric identifier" definition, fails. Its argument biometric identifiers and biometric information both require that the scans/templates *themselves* determine the person's name likewise fails.

A.      Samsung Uses The Face Templates To Identify Individuals.

"Identify" in the definition of biometric information is not defined. Thus, it must be construed using plain meaning. *People v. Chapman*, 965 N.E.2d 1119, 1127 (Ill. 2012). The plain meaning of "identify" has *nothing* to do with determining a name.

2

Its plain meaning is "perceive or state the *identity* of," identity is "the distinguishing *character* … of an individual" or "condition of *being the same*," character is "one of the … *features* that make up and distinguish an individual," and feature means "the makeup or appearance of the face or its parts" or "a prominent part or characteristic." Op. Br., 24; *Feature Definition*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/feature.[2] Samsung ignores this meaning. *E.g.*, Resp. at 21, 56-57 (only quoting definition of "identify" not "identity"). Although unnecessary for biometric identifiers, Appellants' allegations satisfy that meaning.

Every time a user took or received a photo, Samsung scanned the face geometry of each face in the photo, created a template from it specific to the person's facial geometry, and compared the template to all previously-stored face templates to identify the person(s) in the new photo. If there was a match, Samsung grouped the new photo with the previously-saved photos of the person in an album Samsung created. Op. Br., 5-6, 25. In other words, Samsung used the templates for facial recognition, to identify each person in each photo based on their unique facial features and determine which photos contain which person(s) by matching those unique features, thus making the templates biometric information. Similarly, the scans themselves capture each person's unique face geometry composed of various measurements for numerous facial features, which facial-recognition technology can

---

[2] The URL for each Merriam-Webster.com definition cited herein uses the format "https://www.merriam-webster.com/dictionary/____" with the blank being the defined word. For brevity, URLs for definitions cited *infra* are omitted. All emphases herein are Appellants' unless otherwise noted.

233669

use to identify that person any time the person's face appears on the internet or in public. Op. Br., 24-25.

Samsung argues past this, merely repeating the conclusory refrain that facial-recognition matching doesn't establish the person's "identity" while ignoring what that word means. But Samsung doesn't dispute—and thereby concedes—BIPA regulates data used for facial recognition, and facial recognition doesn't use names, it recognizes matching faces. Op. Br., 26; *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1008 n.2 (7th Cir. 2018).

Caselaw demonstrates the facial-recognition matching Appellants allege satisfies the plain meaning of "identify." Op. Br., 25-26; *Howe v. Speedway LLC*, 2024 U.S. Dist. LEXIS 176263, at *24-26 (N.D. Ill. Sep. 29, 2024); *id.* at *27 n.10 (inability to reverse-engineer template back into finger-scan "is not outcome-determinative"). Samsung ignores that *Howe*'s rationale for holding the scan constitutes a biometric identifier says nothing about determining a name. Resp. at 68.

Samsung attempts to distinguish *Hartman*, arguing those scans "*were tied* to the plaintiffs' 'specific' 'usernames and passwords.'" *Id.* But plaintiffs merely alleged "they created usernames and passwords," and the court inferred "Meta *could* match" that to their "scans to identify them." *Hartman v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 167696, at *31 (S.D. Ill. Sep. 17, 2024). *Hartman*'s conclusion usernames and passwords can "identify" confirms "identify" doesn't require determining a name.

4

Samsung's authorities agree. In *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017), someone took photos of plaintiff Rivera using a Google device, which "scanned" each photo. *Id.* at 1091. The scans used her face's "unique contours to create a 'template,'" which Google used "to find and group together other photos of" her and "recognize [her] gender, age, race, and location." *Id.* There were *no* allegations Google used Rivera's template for anything else, had her name or other personal information, or could use her scan/template to determine her name—nor were there allegations that was even generally possible. The court held the templates "qualify" as biometric identifiers, reasoning—from the foregoing allegations alone—each template "is used to identify a person." *Id.* at 1095. "More importantly, … a face template is one of the specified biometric identifiers in [BIPA], namely, a 'scan of … face geometry.'" *Id.*[3]

In fact, people are identified every day in police lineups based on their unique facial features and appearance—not by name. It's settled law that this constitutes identifying the suspect. *See People v. Meeks*, 887 N.E.2d 870, 875 (Ill. Ct. App. 2008) ("identification … is sufficient" if "witness *viewed* the accused under circumstances permitting a positive identification"); *People v. Evans*, 356 N.E.2d 874, 876-77, 880 (Ill. Ct. App. 1976) (identification of defendant during lineup by complainant who "had an ample opportunity to *view*" "*assailants' faces*," but didn't know defendant's name, adequate).

---

[3] Samsung also cites Black's Law Dictionary (Resp. at 48) but doesn't quote its definition, which is "[t]o prove the identity of (a person *or thing*) <the witness *identified the weapon*>." *Black's Law Dictionary* 327 (2d pocket ed. 2001). The weapon example confirms "identify" cannot require determining a name.

233669

Samsung's argument a name is required therefore conflicts with the plain meaning of "identify" for biometric information.

## B. Appellants Satisfy The "Biometric Identifier" Definition, Which Must Be Applied As Written.

Samsung argues the Court should not apply the unambiguous definition of "biometric identifier" because that "ignores … *the phrase* 'biometric identifier,'" "render[ing] *the word* 'identifier' throughout [BIPA] superfluous." Resp. at 49, 59. But the legislature intentionally made the biometric identifier definition broader by omitting the "identify" requirement it included for biometric information, and it did not use the word "identifier" in the definition. Applying the definition does not renders any "word" superfluous—it merely *implements* the legislature's definition.

"When a term is defined within a statute, that term <u>must</u> be construed by applying the statutory definition." *People v. Fiveash*, 39 N.E.3d 924, 928 (Ill. 2015). That means "[r]eplacing [the defined term] … with its statutory definition, as we must." *Id.* It's <u>only</u> "appropriate" to construe a term using its plain and ordinary meaning (*i.e.* dictionary definition) "[w]hen … a term … is *not* specifically defined." *Chapman*, 965 N.E.2d at 1127. Courts construing BIPA <u>must</u> follow these rules. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1089 (7th Cir. 2016).

BIPA's definition of "biometric identifier" provides it "*means* a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. It does not provide the items must *also* be capable of being used to identify a person or determine their name. Therefore, under Illinois' rules, each item listed is a "biometric identifier"—even absent allegations the defendant or data-capturing

6

technology can or did use the item to identify a person. Op. Br., 17-18. Appellants satisfy this definition by expressly alleging Samsung captured scans of face geometry. Op. Br., 15-16.

      C.   Using The Plain Meaning Of "Identifier" Violates *Fiveash* and *Chapman*.

Samsung dissects the phrase "biometric identifier" and construes the plain meaning of "identifier" using a dictionary. Resp. at 20, 48. Since BIPA defines the phrase, this violates the rules above from *Chapman* and *Fiveash*. It also violates the rule you cannot "read[] into" a definition "limitations, or conditions the legislature did not express, nor … add provisions not found in" it. *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1204 (Ill. 2019); Op. Br., 18-19.

Samsung argues applying BIPA's "biometric identifier" definition "requires understanding the ordinary meaning of the words in the term," citing *People v. Trainor*, 752 N.E.2d 1055, 1063 (Ill. 2001). Yet *Trainor* is inapposite because it did not construe statutorily-defined terms. *Id.* at 1063-65 (construing *undefined* term).

Samsung argues *Fiveash* didn't "adopt a categorical rule," it simply "made sense" there to replace "'minor' with its definition because that definition … embraced the common understanding of … 'minor.'" Not true. *Fiveash* was applying a well-established categorical rule. *See, e.g.*, *People ex rel. Scott v. Schwulst Bldg. Ctr., Inc.*, 432 N.E.2d 855, 858 (Ill. 1982); *Beecher Med. Ctr., Inc. v. Turnock*, 566 N.E.2d 445, 447 (Ill. App. Ct. 1990) (statutory definitions are "given controlling effect"); Op. Br., 17; *see also People v. Chavez*, 2025 IL App (1st) 221601, ¶¶73-74

(statute from *Fiveash* "does *not* use [minor] term colloquially," and "[e]ven a popularly understood meaning must yield to a statutory definition").

D.    Reliance On BIPA's Other Definitions Fails.

As noted above, Samsung relies on the "used to identify" limitation in the biometric *information* definition, and the "can be used to uniquely identify" limitation in the confidential and sensitive *information* definition, to support adding the capable-of-identifying limitation for biometric *identifiers*. Resp. at 20-22, 54-55.

But, "[i]n contrast to those definitions, [BIPA] defines 'biometric identifier' with the *complete* set of *specific* qualifying biometric identifiers"—it "simply lists the specific identifiers that are covered." *Google*, 238 F. Supp. 3d at 1094-95 (emphasis in original).

Relying on limitations in BIPA's other definitions to justify adding such limitations to the biometric identifier definition which *omits* them violates Illinois' rules of construction. *Id.* at 1096-97 (rejecting attempt to add biometric information definition's "based on" limitation to biometric identifier definition); *People v. Goossens*, 39 N.E.3d 956, 959 (Ill. 2015); Op. Br., 19-20. Samsung ignores these arguments and authorities, thus conceding the point. *Terry*, 910 F.3d at 1008 n.2.

That biometric information is derived from biometric identifiers changes nothing. Resp. at 22. "[T]here is no parallel structure" between the definitions—and "there *is* a meaningful distinction between identifiers and information (one being the set of biometric measurements, the other being a conversion of those measurements into a different, useable form)." *Google*, 238 F. Supp. 3d at 1097

8

(emphasis in original). Relatedly, Samsung misconstrues *Rosenbach* (Resp. at 48), which merely explained what "[wa]s undisputed" in *that* case. *Rosenbach*, 129 N.E.3d at 1203. *Rosenbach* doesn't support using the biometric information definition (Resp. at 64) to add a capable-of-identifying limitation for biometric identifiers.

Samsung argues biometric identifiers are "confidential and sensitive information," pointing to the word "other" in BIPA's requirements for protecting data. Resp. at 54-55. But that provision sets forth requirements for protecting "biometric identifiers *and biometric information*." 740 ILCS 14/15(e)(2). "Other" is a reference to only "biometric *information*" which, like "confidential and sensitive *information*," contains a capable-of-identifying limitation. This interpretation harmonizes Section 15(e)(2) with all three definitions, renders nothing superfluous, and violates no Illinois rules.

But even assuming biometric identifiers were "Confidential and Sensitive Information," the "can be used to uniquely identify" limitation in that definition (SA.26, 740 ILCS 14/10) does not support the amorphous capable-of-identifying requirements.[4] Whether the defendant who captured the data, or the software used to capture it, can use the data to identify whose data it is or determine the person's name simply does not inform whether the data "*can* be used" for that. *Id.* Similarly, such subjective criteria *not* about the data itself have nothing to do with the potential for others to misuse it following a data breach. There's a complete

---

[4] Citations to "A._" refer to the separately-bound Appendix filed with Appellants' Opening Brief. "SA._" refers to the Opening Brief's Short Appendix.

233669

disconnect between subjective criteria and the fundamental nature of the data, such as whether it's "biologically unique to the individual" or, "when compromised, [it] can[not] be changed" so "the individual has no recourse." 740 ILCS 14/5(c). Those are "the reason[s] for" BIPA and the "problems sought to be remedied," so "the consequence[] of construing" biometric identifier to add a capable-of-identifying limitation is violating Illinois' rules of construction with *no* resulting amelioration of the risks BIPA seeks to address—all of which this Court must consider. *McDonald v. Symphony Bronzeville Park, LLC*, 193 N.E.3d 1253, 1261 (Ill. 2022).

Samsung's caselaw proves the point. In *Corbett v. Cty. of Lake*, 104 N.E.3d 389 (Ill. 2017), the Illinois Supreme Court rejected a construction of "trail" in an immunity statute because the analysis that construction required was "subjective and arbitrary and ha[d] nothing to do with whether a governmental entity should be held liable for creating a risk of injury." *Id.* at 396. As Appellants argued, any subjective test creates absurd, unjust results the legislature could not have intended. Op. Br., 23-24. Samsung doesn't respond to *this* argument, thus conceding its validity. *Terry*, 910 F.3d at 1008 n.2.

> E.   Federal Rules of Construction Cannot Help Samsung.

Although the Court must follow Illinois' rules, *Zahn*, 815 F.3d at 1089, federal rules support Appellants, as they also require "'[w]hen a statute includes an explicit definition, we must follow that definition,' even if it varies from a term's ordinary meaning." *Tanzin v. Tanvir*, 592 U.S. 43, 47 (2020); *Dig. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160-62 (2018) (same); *Burgess v. United States*, 553 U.S. 124,

233669

129-30 (2008) (same, also reasoning definition stated what defined term "'*means*,'" and "[a] definition which declares what a term 'means' … excludes any meaning that is not stated").

It's only when a definition is ambiguous that federal rules hold "it is not unusual to consider the ordinary meaning of a defined term." *Bond v. United States*, 572 U.S. 844, 861 (2014).

Since BIPA's biometric identifier definition unambiguously says what the phrase "means," even federal rules require the definition to be applied as written.

### F.    Reliance On Legislative History Fails.

Samsung also relies on legislative history, citing a finding the public is wary of "biometrics when such information is tied to finances and other personal information." Resp at 55. But relying on legislative history and purpose is improper because the definition is unambiguous. *People v. Castillo*, 2022 IL 127894, ¶¶28, 34. Regardless, this language is not in BIPA's definitions, thus demonstrating the legislature did not intend it for biometric identifiers. *Goossens*, 39 N.E.3d at 959.

Samsung further argues BIPA's "purpose" was regulating "'*unique identifiers*.'" Resp. at 55. Not so. The purpose was "regulating … biometric identifiers and information," 740 ILCS 14/5(g)—both of which the legislature defined.

### G.    Reliance On Other "Biometric Identifiers" Fails.

Samsung cites definitions of "fingerprint" and "voiceprint" to show a face-geometry scan "must be *used* to identify an individual." This fails.

First, *no* case has adopted a capable-of-identifying limitation that requires a biometric identifier to have actually been *used* to identify—that formulation has been rejected. *See, e.g.*, *Daichendt v. CVS Pharmacy, Inc.*, 2022 U.S. Dist. LEXIS 217484, at *11 (N.D. Ill. Dec. 2, 2022).

Second, Samsung is blatantly cherry-picking. For "fingerprint," it cites Meriam-Webster, but ignores the primary definition, which is "the impression of a fingertip *on any surface*." *Fingerprint Definition*, Merriam-Webster.com. For "voiceprint," Samsung uses the legal definition, not the "ordinary dictionary" definition. *Chapman*, 965 N.E.2d at 1127. The ordinary definition is "an individually distinctive pattern of certain voice characteristics that is spectrographically produced." *Voiceprint Definition*, Merriam-Webster.com. Neither supports the capable-of-identifying requirement.

Third, Samsung misuses the rule it relies on, which exists "'to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words....'" Resp. at 63 (quoting *Corbett*, 104 N.E.3d at 397). Samsung isn't trying to limit the breadth of "scan of … face geometry" based on the other items—it's trying to limit the meaning of *every* item by adding the capable-of-identifying limitation.

H.    *Zellmer* Is Unavailing.

Samsung relies heavily on *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir. 2024). But *Zellmer* was wrongly decided.

First, it did not apply Illinois' rules, thus leading to the wrong result. Op. Br., 20-21.

Second, it's internally inconsistent, deeming plain meaning irrelevant when using it would *expand* BIPA's reach ("[s]omething … outside the … statutory definition … can be a biometric identifier under the term's plain meaning, but not be covered"), while finding plain meaning dispositive when it *narrows* BIPA's reach ("something can … fall within BIPA's specific list … but still not be covered"). *Id.* at 1123.

Third, *Zellmer* also violated federal rules of construction that foreclose its conclusion, by citing *Tanzin* while ignoring *Tanzin*'s dispositive rule (which mirrors *Fiveash*), *id.* at 1123-24, and violating *Burgess* by ignoring the fact BIPA states biometric identifier "means" the items listed, instead mischaracterizing this definition as a "list of *potential* 'biometric identifiers,'" *id.* at 1123; *supra* §I(E).

I.    Under Samsung's Interpretation, BIPA Would Regulate Nothing.

Samsung concedes a Device user can associate names and personal information with the face-geometry scans and templates that "might establish the subject's identity," but argues the scans and templates cannot "determine[e] whether the user-provided information matches the subject's true identity," Resp. at 66-67, and "BIPA regulates biometric identifiers and information only if the identifiers and information [*by*] *themselves* can establish an individual's identity," *id.* at 57-58 (emphasis in original).

Yet biometric data "themselves" *cannot ever* "establish an individual's identity" or "determin[e] whether" name information is accurate—nor does

Samsung cite any case requiring this impossibility, Resp. at 58, 67, thus waiving the argument, *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006).

In any event, if what Samsung complains is lacking here were actually required, BIPA would regulate <u>nothing</u>. Indeed, no face-geometry scan or fingerprint *by itself* can ever determine a person's name or even "identify" under the plain meaning. Op. Br., 27. For example, when the police capture a fingerprint from a crime scene, the fingerprint doesn't include the name of the person who left it. The name would come, if at all, from a separate database. Under Samsung's construction, the fingerprint the police captured from the crime scene would not be a biometric identifier because the fingerprint did not, by itself, establish the name.

The same is true of face-geometry scans vis-à-vis facial-recognition databases—and *all* other items listed in the biometric identifier definition. This applies with equal force to templates (*i.e.* biometric information) created from biometric identifiers to facilitate the matching process.

It is hard to image real-world results more absurd than those. This cannot possibly be what the legislature intended. Therefore, Samsung's construction fails. *See People v. Gutman*, 959 N.E.2d 621, 624 (Ill. 2011); *Dawkins v. Fitness Int'l, LLC*, 210 N.E.3d 1184, 1193-94 (Ill. 2022).

## II.    Appellants Allege A Section 15(b) Claim.

In *Cothron*, the Illinois Supreme Court construed "collect" in Section 15(b) to mean "receive, gather, or exact from a number of persons or other sources," and "capture" to mean "take, seize, catch," further observing that "the active verbs used

in section 15(b) … all mean to gain control[.]" *Cothron v. White Castle Sys.*, 216 N.E.3d 918, 923-24 (Ill. 2023). That construction is binding. *Straits Fin. LLC v. Ten Sleep Cattle Co.*, 900 F.3d 359, 369 (7th Cir. 2018).

Appellants allege Samsung violated 15(b) by secretly capturing scans of their face geometry from every photo of them on any Samsung Device, storing and accessing the scans to create face templates of their unique facial features, and storing those templates in a database on the Samsung Device containing the photos as well as on Samsung's cloud-server. Op. Br., 29-30.

To reiterate, whenever anyone took or received a photo of Appellants on a Samsung Device, Samsung captured Appellants' biometric identifiers and information. Those allegations extend beyond Appellants' Devices. Samsung also stores Appellants' face templates in databases it keeps on *other* peoples' Devices— where they remain stored *indefinitely* as Samsung continues to access and use them *to this day*, while preventing *everyone* (including Appellants) from destroying them. *E.g.*, A.16-A.20 ¶¶73-74, 81-84, 94, 99-100.

This pleads Samsung captured the biometric identifiers and information by "tak[ing and] seiz[ing]" it from Appellants' photos without their knowledge or consent, and collected Appellants' data by "exact[ing it] from a number of persons [and] sources"—*i.e.* every photo of them on any Samsung Device—and "gather[ing]" it in a database. *Cothron*, 216 N.E.3d at 924; Op. Br., 30.

233669

A.    That Samsung Used Software Does Not Absolve It Of Liability.

Under BIPA, an entity can capture and gain control of data through software it controls. Op. Br., 28. Samsung mischaracterizes Appellants' allegations as merely alleging it "controls the design of software" and "that software can 'access[]' and 'use' the" data. *E.g.*, Resp. at 30, 4. That's incorrect—the allegations expressly state "Samsung *uses* its" software (*i.e.* secret algorithm) to capture the data, and "Samsung *through* its software" accesses, uses, and stores the data. A.11-A.12 ¶¶53-55, 57-58.

In other words, as the Restatement Samsung relies on demonstrates, Samsung's secret algorithm served as *Samsung's* instrumentality for collecting the data—not Appellants'. Resp. at 37 (citing Restatement (Third) of Agency § 1.04 cmt. e). Samsung trained its algorithm to collect data from photos for its own purposes and "use[d] its" algorithm for that (A.11-A.12 ¶¶53-55, 57-58; A.18 ¶87), just as P trained the dog to collect beer from T's store and used the dog for that (Restatement § 1.04 cmt. e, illustration 3). As such, Samsung's algorithm served as Samsung's instrumentality in Samsung's dealings with Appellants' data, like P's dog "served as P's instrumentality in P's dealings with T," rendering Samsung "subject to liability" just like P. *See id.*

In fact, differences between the illustration and here make the case for Samsung's liability more compelling because Appellants (unlike T) did *not* know about Samsung's algorithm or knowingly help it collect data, and Samsung (unlike P) *knew* its algorithm was collecting the data at issue.

233669

Indeed, it's untenable software could be Device owners' "instrumentality" to capture data when they don't know the software or data even exists. *See Instrumentality, Means, and Agency Definition*, Merriam-Webster.com (instrumentality is "MEANS, AGENCY," means is "something useful or helpful to a *desired* end," and agency is "a person or thing through which power is exerted").

Under Samsung's theory, ransomware is the instrumentality of the victim who turns on their computer, thereby unknowingly triggering the perpetrator's secret software that controls the victim's system until a ransom is paid. Clearly that's not the case. So too here. Samsung's algorithm served as Samsung's instrumentality.

Similarly, Samsung's argument "users use their devices" (Resp. at 38) is misdirection. What matters is Samsung's secret algorithm was Samsung's instrumentality. Appellants' allegations and basic logic establish it was Samsung's instrumentality—not the Device owners' who had no idea it existed or was capturing data, and who cannot disable it or delete the data.

Samsung attempts to compare its secret algorithm to Microsoft Word, but that's not analogous. A person using Word *knows* it exists, *decides* to use it to create a file, then *knowingly opens* and *uses* it to *intentionally* create a file the person *knows* exists, *decides* to save, and can delete at any time. That scenario is nothing like the facts here or in *Hazlitt I-II*.

Indeed, *Barnett* distinguished *Hazlitt* reasoning those plaintiffs—like Appellants—"had no power to delete" the data "or disable the feature on their

devices." *Barnett v. Apple, Inc.*, 225 N.E.3d 602, 610 (Ill. App. Ct. 2022). It likewise distinguished *Ronquillo* reasoning Ronquillo couldn't avoid the data collection and "had no ability to delete" his template, contrasting that with *Barnett*'s facts where "the feature [wa]s wholly optional" and plaintiffs "may delete the information at will." *Id.* at 611-12.

Similarly, *Degrasse v. Hyundai Motor Am.*, 2025 U.S. Dist. LEXIS 92765 (N.D. Ill. May 15, 2025) is inapposite because Hyundai owners knew about and could "turn off the FAWS feature" that captured their data, and they "d[id] not allege … Hyundai accesses" their data. *Id.* at *3, *9. Here, in stark contrast, Samsung's secret algorithm was concealed from Device owners, they cannot disable it, and Samsung accesses and uses their data *to this day*.

B.  Samsung "Obtained" The Biometric Data.

Samsung argues Appellants can only satisfy 15(b) if Samsung "obtained" the biometric data because "'otherwise obtains' indicates" all other verbs in 15(b) "are ways of obtaining." Resp. at 32 (citing *Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 683-84 (N.D. Ill. 2023)).  Samsung is wrong—not a single court has so held. But this Court need not decide that issue because Appellants allege Samsung obtained their biometric data.

The plain meaning of "obtain" is "gain or attain usually"—but not always— "by planned action or effort." *Obtain Definition*, Merriam-Webster.com; *Howe*, 2024 U.S. Dist. LEXIS 176263 at *29-30 (so construing obtain); *Chapman*, 965 N.E.2d at

233669

1127 ("appropriate" to use dictionary for plain meaning of undefined terms).[5]

This is augmented by the Illinois Supreme Court's observation all of 15(b)'s verbs, including "obtain," "mean to gain control." *Cothron*, 216 N.E.3d at 923. "Otherwise" means "in a different way or manner." *Otherwise Definition*, Merriam-Webster.com.

Accordingly, the plain meaning of "otherwise obtain" is gain control of data in a different way. The allegations establish Samsung "obtained" the data by gaining control of it.

### 1. Samsung Gained Control Of The Data.

Samsung exclusively controlled Appellants' biometric identifiers and information. Op. Br., 31-32. To summarize, Samsung—not the Device owners:

- Decided to extract, "store[]," "access," and "use[]" face-geometry scans to create templates;

- "[S]tored" the templates for as long as Samsung chose on both the Device and its cloud-servers, and "access[ed]" and "used" them for purposes Samsung chose; and

- Exclusively controlled the secret algorithm that served as Samsung's instrumentality to do those things.

A.15 ¶69. Further, Samsung *prevents* Appellants from accessing, using, or deleting their templates that Samsung stores on their Devices and innumerable *other peoples'* Devices. A.15-A.20 ¶¶69, 71, 73, 81-85, 94, 99. These are the hallmarks of "control." *See Control Definition*, Merriam-Webster.com.

---

[5] Samsung's definition *from 1989* is outdated—that dictionary now omits the proviso Samsung relies on. *See* Resp. at 32; *Obtain Definition*, Oxford English Dictionary, https://www.oed.com/dictionary/obtain_v?tab=meaning_and_use&tl=true#33684690.

233669

Appellants and other Device owners, on the other hand, have *no* control. They cannot:

- Disable or modify Samsung's algorithm;

- Prevent Samsung from collecting their data; or

- Use their Devices to take/receive a photo without Samsung collecting biometric identifiers and information.

Op. Br., 31-32.

Appellants' allegations are materially identical to those held sufficient in *Hazlitt v. Apple Inc.*, 500 F. Supp. 3d 738 (S.D. Ill. 2020) ("*Hazlitt I*"). Samsung responds—without elaboration—"*Hazlitt* did not hold that Apple possessed, controlled, captured, or otherwise obtained face-geometry scans that were stored, used, and accessed *only* on a user's device." Resp. at 43 (emphasis in original). But that's exactly the scenario from *Hazlitt I* and *II*.

Hazlitt alleged "Apple does not store … [the data] on its servers, but rather, … on each Apple device locally." *Hazlitt I*, 500 F. Supp. 3d at 742; *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 647 (S.D. Ill. 2021) ("*Hazlitt II*"). Thus, there was a risk "of disclosure of their biometric data as the result of a data breach on any Apple device" storing their data. *Id.* The court held plaintiffs pled "Apple both 'collected' and 'possessed'" the data, reasoning Apple automatically collected it "using proprietary software that Apple owned, exclusively controlled, and barred individual users from accessing, removing, or disabling," Apple stored the data on the devices in "databases that Apple provided users no knowledge of, or control over," and only Apple "could access" the data "or disable its collection." *Hazlitt I*, 500

20

F. Supp. 3d at 750; *Hazlitt II*, 543 F. Supp. 3d at 652 (re-adopting same analysis). That mirrors Appellants' allegations summarized above.

### 2. Control Does Not Require Storage, Access, Or Use.

Samsung argues control "turns on the entity's ability to store, access, or use that data" and "*Cothron* did not address" whether collection requires storage. Resp. at 26, 28, 42. That's incorrect—*Cothron* held "section 15(b)(2) … distinguishes between collection and storage." 216 N.E.3d at 924. *Cothron* also made clear the system stored just one scan of each employee's fingerprint—the original scan—but subsequent scans were still collections or captures. *Id.* (explaining system first "obtains an employee's fingerprint and stores it in its database," and "[w]ith the subsequent scans, the fingerprint" captured anew, *i.e.* the "authentication scan[]," "is compared to *the stored copy*"). Under those facts, the court rejected White Castle's argument the "subsequent authentication scans … cannot be collections or captures." *Id.* at 924.

Because Cothron's "original," stored fingerprint-scan was collected before BIPA was enacted, each actionable scan was "a routine authentication scan." *Id.* The court still held a claim accrued *every* time the software scanned Cothron's fingerprint. *See id.* at 925 ("This is true the first time an entity scans a fingerprint or otherwise collects biometric information, but it is no less true with each subsequent scan[.]"). In other words, *Cothron* confirmed the un-stored scans were collections that trigger liability.

233669

Even without *Cothron*, Samsung's argument fails. First, Section 15(b)

acknowledges collection can occur without storage, as it requires an entity collecting

data to inform the person their data is being "collected <u>or</u> stored." 740 ILCS

14/15(b)(1). Use of "or" establishes data can be collected without being stored. *Mosby*

*v. Ingalls Mem'l Hosp.*, 234 N.E.3d 110, 119 (Ill. 2023) ("'or' is disjunctive" and

"connotes two different alternatives").

Second, *Cothron* is not the only case holding an entity can capture or possess

data without storing it. Op. Br., 42 (collecting cases); *Howe*, 2024 U.S. Dist. LEXIS

176263 at *29-30 (same for "obtain"; although the scans "might only be retained for

less than a half-second … they are nonetheless 'gained or attained' … to generate

the Template").

Third, contrary to Samsung's position, storage, access, use, and possession

cannot be prerequisites to control because they are merely ways to *exercise* control—

not gain it. Capturing data (*i.e.* gaining control of it under *Cothron*) necessarily

precedes storage, access, use, *and* holding it at one's disposal (*i.e.* possession under

*People v. Ward*, 830 N.E.2d 556, 560 (Ill. 2005)) because one cannot do any of those

things without first gaining control of the data (*i.e.* capturing it). *Figueroa v. Kronos*

*Inc.*, 454 F. Supp. 3d 772 (N.D. Ill. 2020), for example, held plaintiffs pled a 15(b)

claim by alleging "Kronos 'stored,' 'used,' and 'disclosed' [their] biometric data"

because, "to have done those things Kronos necessarily first had to 'obtain' the

data." *Id.* at 784. Other courts have relied on this same logic. *See Vance v.*

*Amazon.com, Inc.*, 525 F. Supp. 3d 1301, 1313 (W.D. Wash. 2021) ("to have stored or

used the data, [Amazon] necessarily first had to 'obtain' the data") (cleaned up); *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1297 (W.D. Wash. 2021) (same); A.87 (*Powell v. Shiseido*, 2:21-cv-02295-CSB-EIL (C.D. Ill. Aug. 22, 2022), holding "if Defendant disposed of the data, it must have first held the data at its disposal").

Finally, Samsung is incorrect *Barnett* dismissed claims because Apple didn't store, access, or use the data. Those claims failed because the allegations established device users knowingly enabled and used Apple's software to intentionally collect their own data, and they—not Apple—controlled whether and when to delete their data. Op. Br., 37-38 (citing *Barnett*, 225 N.E.3d at 603, 610, 613). Here, by contrast, Device owners don't even know Samsung's secret algorithm exists, and they cannot delete the data Samsung captured. Samsung ignores this critical distinction. And to the extent *Barnett* relied on storage, it conflicts with *Cothron* which controls. Op. Br. n.11; *Straits*, 900 F.3d at 369; *see also Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015) (appellate-court opinions trumped by "persuasive indications," *e.g. Cothron*, "the Illinois Supreme Court would decide the issue differently").

### 3. Samsung Stored, Accessed, And Used The Data.

Even if storage, access, or use were required, Samsung did so. Samsung stored, accessed, and used the face-geometry scans and templates both on the Devices of everyone who took or received a photo of Appellants, and on Samsung's cloud-servers:

> *Samsung uses its proprietary facial recognition technology* to capture *a scan of the face geometry* of each face ..., *which*

> *Samsung stores* …, *accesses, and uses to create a face template which Samsung* then *stores, accesses, and uses*[.]

> *Samsung automatically* … captures a scan of the person's unique facial geometry … and *stores it* at least ephemerally.

> *Samsung* … then *accesses the stored scan of face geometry and uses it* to create a unique digital … face template[.]

> *Samsung stores the face templates* in *a database that Samsung keeps* at least in … the user's Samsung Device.

> *Samsung uses these face templates* to … group photos based upon the particular individuals who appear[,] … *by accessing the face templates* stored *in its database* …. *Samsung then accesses and compares the previously-stored face templates* against the newly-stored face template(s)[.]

A.11-A.12 ¶¶53-55, 57-58.

Samsung also stored the templates on its cloud-servers. Appellants squarely allege "[t]he Gallery app" contents are uploaded to Samsung's cloud, Samsung "stores [the scans] at least ephemerally" (without allegations limiting where), and Samsung "stores the face templates in … *at least*" the Device and uses them to create grouped-"photograph and video albums" it stores in the App. A.10-A.11 ¶¶52-55, 57, n.11. Those and the other allegations Appellants cite support the reasonable inference templates were stored in Samsung's cloud with the App's other contents because, otherwise, the grouped-albums that rely on/use the templates could not be re-created when shared with others' Devices or restored from the cloud. Op. Br.,43-44.

Samsung doesn't explain how Appellants' *actual* allegations show this inference is not possible, thus implicitly conceding it is. Nor does Samsung dispute

that Appellants' allegations mirror many supporting the cloud-storage claim in *Doe v. Apple Inc.*, 2022 U.S. Dist. LEXIS 222988, at *3-5 (S.D. Ill. Aug. 1, 2022) ("*Hazlitt III*"), and the other allegations there are unnecessary here without discovery. Op. Br., 43. Accordingly, Appellants' allegations justify the cloud-storage inference; Samsung's argument other facts refute it fails. Resp. at 40-41.

      C.    Samsung's Active-Step Rule And Analysis Fail.

Samsung misleadingly quotes *Barnett* for the proposition that 15(b) "requires a 'step beyond mere possession,'" Resp. at 36, and argues Appellants' 15(b) claim fails because they didn't adequately allege possession under 15(a), *id.* at 17, 36. This is wrong as 15(a) is not a prerequisite for 15(b).

No case has held a 15(b) claim inadequate for failure to allege possession under 15(a). *See Clark v. Microsoft Corp.*, 688 F. Supp. 3d 743, 747-49 (N.D. Ill. 2023) (dismissing 15(b) claim only because different entity collected the data, not mentioning possession); *Jones*, 649 F. Supp. 3d at 685 (same); *Mayhew v. Candid Color Sys.*, 743 F. Supp. 3d 994, 1013 (S.D. Ill. 2024) (sustaining all claims); *Degrasse*, 2025 U.S. Dist. LEXIS 92765 at *9 (dismissing 15(b) claim that didn't allege defendant "has undertaken any effort" to capture data, not mentioning possession); *Barnett*, 225 N.E.3d at 610, 612 (holding 15(b) claim failed because allegations established Apple-device users *knowingly* used *optional* software to capture their own data *they* controlled and could delete, per Op. Br., 37-38—not because of any active-step requirement or failure to allege possession).

25

Neither the Illinois Supreme Court nor Illinois Appellate Court has adopted an active-step requirement. Resp. at 3, 33, 36. *Barnett* just purports to recite what *Ronquillo* held. 225 N.E.3d at 612 ("In *Ronquillo*, the court found … capture … required a step beyond 'mere possession.'") (quoting *Ronquillo v. Doctor's Assocs., LLC*, 597 F. Supp. 3d 1227, 1231 (N.D. Ill. 2022)). Furthermore, *Barnett* was incorrect—*Ronquillo* did not adopt the active-step requirement, much less one under which possession is a prerequisite to capture. *See Ronquillo*, 597 F. Supp. 3d at 1231 ("the Court need not resolve the question").

Likewise, *Cothron* and *Watson v. Legacy Healthcare Fin. Servs., LLC*, 196 N.E.3d 571 (Ill. App. Ct. 2021) didn't adopt, consider, or discuss an active-step requirement—much less a formulation supporting Samsung's argument that pleading capture under 15(b) requires alleging defendant possessed the data under 15(a).

### D.    Samsung Took Active Steps To Capture The Data.

To the extent necessary, any active-step merely requires a defendant "take some affirmative step in furtherance of" capturing the data. *Jones*, 649 F. Supp. 3d at 684. Samsung took such steps by, *inter alia*: embedding into its Devices and using a secret algorithm Samsung exclusively controlled to capture, store, access, and use biometric identifiers and information (*i.e.* face-scans and templates) to identify specific individuals in subsequent photos via facial-recognition matching; preventing users from choosing whether that occurs; and inviting them to use the Gallery App. Op. Br., 45; *Ronquillo*, 597 F. Supp. 3d at 1231-32 (allegations DAL

26

uses "system, which it exclusively controls, to capture workers' fingerprints and create … templates" "allow for the inference" DAL "took active steps to obtain" that data).

Samsung addresses only its own mischaracterizations of Appellants' argument but does not demonstrate those weren't active steps, thus conceding they were. *Compare* Op. Br., 45, *with* Resp., 38-39. Indeed, Samsung entirely ignores the *active-step* holdings from Appellants' cases. Op. Br., 45-46.

III.   Appellants Allege A Section 15(a) Claim.

Under Section 15(a), "possession" occurs when defendant "has or takes control of the [data] or holds the [data] at [its] disposal,'" which "does not require exclusive control." *E.g.*, *Hazlitt II*, 543 F. Supp. 3d at 653 (quoting *Ward*, 830 N.E.2d at 560). Appellants' allegations satisfy this on three separate grounds: (1) Samsung exclusively controlled the data and access to it, *supra* §II(B)(1); (2) Samsung stored the templates (*i.e.* biometric information) on its cloud-servers, *supra* §II(B)(3); and (3) Samsung held the templates at its disposal by storing them on the Device and making use of them as it chose for facial-recognition. Op. Br., 46-48.

Samsung responds to #1 with its control-requires-storage-access-use argument. But control doesn't require any of those things, and regardless, Appellants allege Samsung did them all. *Supra* §I(B)(2)-(3).

Samsung's response to #2 doesn't explain how Appellants' *actual* allegations refute a plausible inference of cloud-storage—because they don't, but instead

27

demonstrate the inference is possible and therefore required at this stage. *Supra* §II(B)(3).

Samsung argues past #3, asserting possession only "means ... control." Resp. at 27. But possession also includes "hold[ing] the [data] at [one's] disposal," which Appellants allege Samsung did. Op. Br., 48.

## CONCLUSION

The Second Amended Complaint gives Samsung more than the fair notice Rule 8 requires and plausibly suggests Appellants have a right to relief. Therefore, the Court should hold Appellants pled plausible 15(a) and (b) claims, reject any capable-of-identifying requirement for biometric identifiers as a matter of law, construe "identify" in the biometric information definition using its plain meaning above, and reverse the district court's judgment.

233669

Dated: July 18, 2025

Respectfully submitted,

G.T., BY AND THROUGH NEXT FRIEND LILIANA T. HANLON, SHIMERA JONES, LEROY JACOBS, BALARIE COSBY-STEELE, JOHN DEMATTEO, RICHARD MADAY, ALLISON THURMAN, AND SHERIE HARRIS, individually and on behalf of all others similarly situated, Plaintiffs-Appellants

By:   /s/ Theodore H. Kuyper

Keith J. Keogh
Theodore H. Kuyper
Gregg M. Barbakoff
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092
keith@keoghlaw.com
tkuyper@keoghlaw.com
gbarbakoff@keoghlaw.com

Christian Levis
Amanda Fiorilla
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Attorneys for Plaintiffs-Appellants

233669

<u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) as modified by Circuit Rule 32(c) because this brief contains 6,675 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) as modified by Circuit Rule 32(b), and the type-style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared using Microsoft Word for Office 365 in 12 point Century Schoolbook, a proportionally spaced typeface.

Dated: July 18, 2025

 /s/ Theodore H. Kuyper
Theodore H. Kuyper

*Attorney for Plaintiffs-Appellants*

233669